The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff

v.

RUADHRI MCCORMICK,

Defendant.

NO. 2:26-cr-00131-KKE

**UNITED STATES' SENTENCING MEMORANDUM**

## I. INTRODUCTION

Ruadhri (pronounced "Rory") McCormick is a successful Seattle restaurateur who doesn't pay his taxes. McCormick opened a restaurant called Single Shot in 2014, where he employed bartenders, servers, and cooks. He paid these employees by the hour and withheld federal employment taxes from their paychecks. But, unbeknownst to the employees, he did not remit those taxes to the IRS as the federal tax code requires.

Between 2014 and 2024, McCormick withheld but failed to remit more than $1 million in federal payroll taxes. Over the same period, McCormick failed to pay the employer portions of Social Security taxes, Medicare taxes, and federal unemployment taxes. In total, McCormick failed to pay $1,446,341 in payroll and employer taxes.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

McCormick spent hundreds of thousands of this ill-gotten money on a home on Vashon Island, travel, and other personal expenses.

This serious conduct warrants a serious sanction: the government joins the U.S. Probation Office in recommending that McCormick serve fifteen months in prison and three years of supervised release.

## II. BACKGROUND ON THE TAX CODE

The tax code imposes four types of taxes on wages paid to employees: income tax, Social Security tax, Medicare tax, and federal unemployment tax. Income tax is imposed on employees based on how much they earn. 26 U.S.C. §§ 1, 61(a)(1). Social Security and Medicare tax (referred to as FICA taxes) are separately imposed on employees and employers. *See* 26 U.S.C. § 3101(a), 3101(b), 3111(a), 3111(b). Federal unemployment tax is imposed solely on employers. 26 U.S.C. § 3301.

The tax code requires employers to withhold employee FICA and income tax from the wages they pay their employees and to pay over the withheld amounts to the government. 26 U.S.C. §§ 3102(a), 3102(b), 3402, 3403. "The amounts withheld constitute a special fund held in trust for the benefit of the United States and are paid over quarterly," *United States v. Jones*, 33 F.3d 1137, 1139 (9th Cir. 1994), and are known as "trust fund taxes." 26 U.S.C. § 7202 imposes criminal liability on employers that fail "to collect, account for, and pay over" trust fund taxes.

Business owners file an IRS Form 941 with their quarterly tax deposits on which they report how much they've withheld in taxes and are remitting to the IRS. *See* Internal Rev. Serv., Employer's Quarterly Federal Tax Return (last visited Oct. 19, 2026, 8:17 a.m.), https://www.irs.gov/pub/irs-pdf/f941.pdf. Each year, employers give their employees a form W2 that identifies the employee's total income and the amount of taxes withheld. *See* Internal Rev. Serv., About Form W-2, Wage & Tax Statement (last visited Oct. 19, 2026, 8:18 a.m.), https://www.irs.gov/forms-pubs/about-form-w-2. Employees use this form W2 to prepare their personal tax returns. *Id.*



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## III. CASE BACKGROUND

### A. McCormick opened Single Shot in 2014.

McCormick opened Single Shot in 2014 to great fanfare.[1] McCormick was already a seasoned restaurateur by 2014—he was the part owner of re:public restaurant in Seattle, and he later worked with partners to open El Grito, a different Seattle restaurant. McCormick hired an experienced chef, manager, and bar tender to run Single Shot, and the restaurant thrived.[2]

McCormick was the sole owner of Single Shot. Plea Agreement ¶ 9(a). That means McCormick had final authority to hire and fire employees, set schedules, and issue paychecks. Plea Agreement ¶ 9(b). McCormick was the sole signatory on Single Shot's bank account, and he had final say on how Single Shot spent its money. *Id.*; *see also* Declaration of Lauren Watts Staniar (filed concurrently), Ex. A.

McCormick initially put his experience running restaurants to use in the back of the house too. He hired a bookkeeper who helped with Single Shot's invoices and certain point-of-sale transactions. Staniar Decl. Ex. B, at 2. The bookkeeper also filed Single Shot's Washington state and local taxes. *Id.* at 1. Single Shot's bookkeeper was not responsible for preparing or filing Single Shot's federal tax returns. *See id.* at 1–2.

Instead, McCormick hired the payroll processing company ADP to manage its payroll and federal taxes. *Id.* at 2. ADP's role was to process biweekly payroll, withhold taxes from employee paychecks, and then file and pay the federal taxes. *Id.* ADP was supposed to withdraw federal tax payments from Single Shot's bank account and remit those payments to the IRS each quarter. *Id.*

---

[1] Vermillion, Allecia and Chaudhry, Nidhi, Seattle Met, *Single Shot Is Now Open on Summit Ave* (Oct. 14, 2014), https://www.seattlemet.com/eat-and-drink/2014/10/single-shot-is-now-open-on-october-2014.

[2] Riehl, Emily, Capitol Hill Seattle Blog, *One of a kind on Summit Ave, Single Shot marks 10 years on Capitol Hill* (Dec. 3, 2024), https://www.capitolhillseattle.com/2024/12/one-of-a-kind-on-summit-ave-single-shot-marks-10-years-on-capitol-hill/.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B. ADP fired Single Shot, and Single Shot stopped paying taxes.**

In February 2015, ADP terminated Single Shot as a tax client because Single Shot repeatedly had insufficient funds in its bank accounts to cover ADP's withdrawal of federal payroll taxes. Staniar Decl. Ex. B, at 2. McCormick understood that ADP was no longer collecting and remitting Single Shot's federal payroll taxes. *Id.* After ADP terminated Single Shot's payroll tax services, McCormick was responsible for collecting Single Shot employee payroll taxes and remitting those taxes to the IRS. *See id.*; Plea Agreement ¶ 9(b).

Although ADP terminated Single Shot as a federal tax client, it continued providing payroll services. Staniar Decl. Ex. B, at 2. ADP prepared year-end W2s for employees, which McCormick provided to his employees at tax time. *See, e.g.*, Staniar Decl. Exs. C & D. Those W2s show the employees' taxable income, as well as the tax amounts Single Shot withheld and was supposed to remit to the IRS. An image of one such W2 is shown below, with the trust fund taxes identified:


W-2 Employee Reference Copy Wage and Tax Statement 2021
OMB No. 1545-0008
Copy C for employee's records.

d Control number 000089 RV/RTW | Dept. | Corp. | Employer use only A 9

c Employer's name, address, and ZIP code
SINGLE SHOT LLC
611 SUMMIT AVE E
SEATTLE, WA 98102
Batch #92210

e/f Employee's name, address, and ZIP code
[redacted]

b [redacted]
a Employee's SSA [redacted] XXX-XX[redacted]

| | |
|---|---|
| 1 Wages, tips, other comp. 37555.35 | 2 Federal income tax withheld 4755.95 |
| 3 Social security wages 12123.45 | 4 Social security tax withheld 2328.43 |
| 5 Medicare wages and tips 37555.35 | 6 Medicare tax withheld 544.55 |
| 7 Social security tips 25431.90 | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12 |
| 14 Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp / Ret. plan / 3rd party sick pay |
| 15 State / Employer's state ID no. | 16 State wages, tips, etc. |
| 17 State income tax | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |





UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

However, unbeknownst to Single Shot employees, McCormick did not remit those trust fund taxes to the IRS. Instead, the money stayed in Single Shot's bank account.

**C. McCormick's bookkeeper and the IRS warned him about his missed tax payments.**

Single Shot's bookkeeper repeatedly reminded McCormick of his obligation to file federal payroll taxes and remit payments. In September 2017, Single Shot's bookkeeper sent McCormick an email titled "Single Shot Financials, Payroll Taxes and Tax Returns." Staniar Decl. Ex. E. In it, she pushed him on Single Shot's federal payroll taxes, asking "[a]re you able to start having ADP pay and file the payroll taxes again?" She suggested McCormick approach the IRS with a payment plan so he could get back on track. *Id.* A month later, the bookkeeper again emailed McCormick about his federal taxes: "Hey let's have a meeting with CPA Dan and get him up to date on everything from the unpaid payroll taxes to how we might be able to fix the account and get your tax returns done." Staniar Decl. Ex. F. IRS sent multiple notifications to McCormick regarding his failure to pay employment and personal tax returns.

McCormick did not heed any of these warnings—he didn't start paying his taxes again until the end of 2024, after he learned of the IRS's investigation.

**D. Single Shot failed to remit more than $1.4 million in employment taxes.**

Over the years, Single Shot employed as many as 87 people as servers, bartenders, and cooks. Plea Agreement ¶ 9(c). Single Shot withheld taxes from these employees' paychecks, including federal income taxes and Medicare and Social Security taxes, but it did not pay over those taxes to the IRS. *Id.* In total, between 2014 and 2024, McCormick failed to pay over $1,027,362 in payroll taxes owed by Single Shot. Plea Agreement ¶ 9(d). Over the same period, McCormick also failed to pay the employer portions of Social Security taxes, Medicare taxes, and federal unemployment taxes. In total, McCormick failed to pay $1,446,341 in payroll and employer taxes. Plea Agreement ¶ 9(d).



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

McCormick also failed to file personal tax returns—he did not file a single personal income tax return, or make a single personal income tax payment, for any of the tax years from 2015 through 2024. Plea Agreement ¶ 9(f).

**E. McCormick spent employees' tax money on travel and a Vashon home.**

Records from McCormick's and Single Shot's banks show that McCormick intermingled funds in his bank accounts, using Single Shot's account for personal expenses like credit card payments and charges at casinos. *See* Staniar Decl. Ex. G. Between mid-2019 and the end of 2023, McCormick spent Single Shot's money on a variety of different personal expenses, including charges at casinos ($124,668), buying and renovating a home on Vashon ($399,819), and travel expenses ($38,227). *Id.* McCormick also withdrew $344,419 in cash from Single Shot's accounts, which investigators could not trace. *Id.*

**F. McCormick pled guilty to an Information.**

McCormick learned about the IRS's investigation in 2024. Staniar Decl. Ex. H. McCormick cooperated with the investigation. When approached by the government earlier this year, McCormick quickly accepted responsibility for his conduct and agreed to be charged by Information. *See* Dkt. No. 1. McCormick pled guilty to one count of willful failure to pay over tax in violation of 26 U.S.C. § 7202.

## IV. SENTENCING GUIDELINES

The United States Probation Office has calculated the United States Sentencing Guidelines as follows:

| Guideline | Description | Impact |
|---|---|---|
| USSG § 2T1.6(a), USSG § 2T4.1 | Willful failure to pay over tax; loss between $550,000 and $1,500,000 | +20 |
| USSG § 3E1.1(a) | Acceptance of responsibility | -2 |
| USSG § 3E1.1(b) | Acceptance of responsibility, additional point | -1 |



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The U.S. Probation Office found McCormick to be in criminal history category II, with two prior convictions that score. An offense level of 17 with a criminal history category of II yields a United States Sentencing Guidelines range of 27–33 months.

## V. SENTENCING RECOMMENDATION

The government joins the U.S. Probation Office in recommending fifteen months in prison and three years of supervised release. This sentence appropriately balances the 18 U.S.C. § 3553(a) factors: It reflects the seriousness of the crime—which spanned years and harmed dozens of employees—and provides adequate deterrence. At the same time, the below-guidelines recommendation recognizes McCormick's willingness to quickly accept responsibility and work to make amends. The government also recommends the Court award $1,446,341 in restitution, as agreed in the plea agreement. *See* Plea Agreement ¶ 14.

### A. The offense was serious and harmful.

The nature and circumstances of the offense support the government's recommended fifteen-month sentence. *See* 18 U.S.C. § 3553(a).

The duration of McCormick's conduct is entirely aggravating. McCormick failed to pay employment taxes for about a decade—from 2014 through 2024. This crime does not reflect a momentary lapse in judgment. Thirty-nine times McCormick's quarterly taxes came due, and thirty-nine times he made the conscious decision not to pay them. *See* Plea Agreement ¶ 14(a). McCormick was also afforded several offramps and didn't take them: In 2017, McCormick's bookkeeper sent him an email reminding him about his mounting federal tax liability. Staniar Decl. Ex. E. She told him that he likely could get back on track by negotiating a payment plan with the IRS. *See id.* She urged him to meet with his accountant. He didn't heed her advice, and for seven more years withheld taxes from his employees' paychecks without remitting those to the IRS.

The result is a loss of more than $1.4 million in taxes to the American people, a significant sum. To put this loss in perspective, defendants in this district have received sentences of several years for comparable loss amounts. *See, e.g.*, *United States v.*



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*McDonagh*, 24-cr-120-JHC (18 months in prison for $500,000 loss in contractor fraud scheme); *United States v. Guillory*, 23-cr-077-RSM (36 months in prison for embezzlement case with $2.5 million loss); *United State v. Hamrick*, 20-cr-0079-RAJ (36 months in prison for embezzlement case with $1.25 million in loss). In persistently failing to pay taxes, McCormick deprived the government of money intended to pay for roads, bridges, and social programs.

McCormick also deprived his employees of money they earned as servers, bartenders, and cooks. McCormick withheld taxes from his employees' paychecks, meaning he reduced their take-home pay by an amount he represented he would remit to the IRS on their behalf. In some sense, that money belonged to the employees'—McCormick was supposed to hold it in trust on their behalf and send it to the IRS for their benefits. But, instead of remitting the withheld amounts as promised, the money sat in Single Shot's bank account, where McCormick spent it on himself.

This failure is perhaps most harmful when it comes to withheld social security taxes. In the ordinary course, IRS collects taxes from businesses and remits them to the Social Security Administration (SSA), where they're credited to employees' Social Security accounts. When someone retires, SSA calculates the amount of their monthly social security payment based on how much the worker earned during their career and how long they worked.[3] According to SSA, "[h]igher lifetime earnings result in higher benefits. If there were some years when you didn't work, or had low earnings, your benefit amount may be lower than if you worked steadily." *Id.* at 7. Because McCormick never remitted payroll taxes to the IRS, this process was disrupted for Single Shot employees—although those employees worked in relevant years, they show no Single Shot earnings reported to SSA. *See, e.g.*, Staniar Decl. Ex. C, at 4, 9. The apparent interruption in work could lead to lower benefits for Single Shot employees.

---

[3] *See* Soc. Sec. Admin, Understanding the Benefits 6–7 (2026), https://www.ssa.gov/pubs/EN-05-10024.pdf



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

McCormick's employees were understandably upset when confronted with the prospect of lower lifetime earnings impacting SSA benefits. For example, IRS interviewed Single Shot employee T.D. who worked as a server and bartender at Single Shot between about 2015 and 2019. *Id.* at 5. T.D. logged onto her Social Security account with the agents present. *Id.* at 7. Agents noted that there were no earnings reported to SSA for 2016, 2017, and 2020. T.D. was understandably "very surprised and upset that she did not see any earnings reported for those years when she worked at Single Shot." *Id.*

Instead of paying taxes—taxes that should have benefitted employees like T.D.—McCormick spent Single Shot's money on travel, gambling, and remodeling a home on Vashon. *See* Staniar Decl. Ex. G. McCormick spent lavishly, doling out about $900,000 to casinos, contractors, and for airplane tickets between the middle of 2019 and the end of 2023, as shown in the chart below. *See id.*

| **Use** | **Amount** |
|---|---|
| McCormick Vashon house purchase and renovations | $399,819 |
| Cash Withdrawals | $344,419 |
| McCormick Casino Expenses | $124,668 |
| McCormick Travel Expenses | $38,277 |
| **TOTAL** | **$907,183** |

The $399,819 spent on McCormick's Vashon home came entirely from Single Shot's bank account. In all but three quarters from December 2021 through December 2023, McCormick's spending on his home exceeded Single Shot's trust fund tax liability:

| **Tax Period** | **Spending on Vashon Home** | **Unpaid Trust Fund Taxes** |
|---|---|---|
| 2021-12 | $54,845 | $35,002 |
| 2022-03 | $132,604 | $26,752 |
| 2022-06 | $38,517 | $30,945 |
| 2022-09 | $0 | $33,561 |
| 2022-12 | $39,347 | $35,684 |



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Tax Period | Spending on Vashon Home | Unpaid Trust Fund Taxes |
|---|---|---|
| 2023-03 | $23,619 | $31,918 |
| 2023-06 | $59,670 | $35,653 |
| 2023-09 | $35,234 | $32,995 |
| 2023-12 | $15,983 | $35,140 |

*Compare* Staniar Decl. Ex. G, *with* Plea Agreement ¶ 14(a). In other words, McCormick could have paid Single Shot's taxes, but he bought and renovated a house instead, to the detriment of society and his employees.

**B. The government's recommendation promotes deterrence and respect for the law.**

McCormick has long co-mingled and mismanaged personal and business finances—as the U.S. Probation Office observed, this mismanagement likely contributed to his offense. *See* PSR ¶ 80. McCormick apparently is not improving, he continued to mismanage his financials on pretrial supervision, even though his probation officer offered him support and encouragement. Whether McCormick is unwilling or unable to get his financial house in order, his sloppiness raises the risk that he'll re-offend. A lengthy prison sentence is therefore necessary to protect the community and ensure McCormick understands the seriousness of his conduct.

A fifteen-month sentence is necessary for general deterrence. General deterrence is a particularly important consideration in cases involving tax fraud. The IRS depends on businesses to honestly report and remit employee trust fund taxes. Audits are expensive, so the IRS can only do them in rare occasions, which means that violations of the tax code often go unpunished. So, willful and intentional violations of the tax code, such as McCormick's, must come with a criminal penalty to discourage others from ignoring their tax obligations. If other taxpayers were to see McCormick receive a light sentence, it would encourage them to engage in similar conduct. The need for general deterrence supports a


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

meaningful custodial sentence. A fifteen-month sentence is the minimum term necessary to persuade other prospective tax cheats to pay their fair share.

**C. The sentence accounts for McCormick's acceptance of responsibility.**

There are important mitigating factors that warrant a below-guidelines sentence here. First, McCormick's guidelines as calculated by the U.S. Probation Office reflect two criminal history points for driving offenses from 2010 and 2023. Although serious, these offenses don't reflect persistent criminal behavior, and at least one of them happened sixteen years ago. PSR ¶ 36.

Second, McCormick promptly accepted responsibility for his conduct. The IRS informed McCormick of its criminal investigation in 2024. McCormick told agents who contacted him that he wanted to work in good faith to make things right. McCormick waived his right to an indictment and agreed to be charged by information. He pled guilty at his arraignment, and as far as undersigned counsel understands, has taken full responsibility for his conduct. McCormick has expressed remorse for his crime and a desire to do better. McCormick also agreed to a significant restitution payment as part of his sentence, reflecting a desire to make the government (and by extension his employees) whole. McCormick's willingness to take responsibility for his crime militates in favor of a below-guidelines sentence.

**D. The recommended fifteen-month sentence would not create unwarranted disparities.**

The government's recommended sentence is consistent with other recent tax and financial crime sentences in this district. *See, e.g.*, *United States v. Rinthalukay*, 2:23-cr-00013 (W.D. Wash.); *United States v. Kim*, 2:23-cr-00141-JLR (W.D. Wash.). *Rinthalukay* is an analogous employment tax case. There, like here, the defendant (a restaurant owner) withheld taxes from his employees' paychecks and failed to remit those taxes to the IRS. Gov't Sent. Mem., at 1–2, *United States v. Rinthalukay*, 2:23-cr-00013-JLR, Dkt. 25 (W.D. Wash., filed Apr. 25, 2023). The tax loss was comparable—Rinthalukay agreed to a tax



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

loss of about $1 million, and McCormick agrees that the tax loss here is about $1.4 million. Recognizing the gravity of the offense, the Court sentenced Rinthalukay to 18 months in prison and three years of supervised release. *See* Judgment, *United States v. Rinthalukay*, 2:23-cr-00013-JLR, Dkt. 31 (W.D. Wash., May 2, 2023).

Likewise, in *United States v. Kim*, the Court sentenced the defendant to ten months in prison and two years of supervised release for tax evasion under 26 U.S.C. § 7201. Judgment, *United States v. Kim*, 2:23-cr-00141-JLR, Dkt. 21 (W.D. Wash., Dec. 19, 2023). Kim paid himself in cash from his two restaurants and failed to report that additional income to the IRS—he concealed about $1.7 million in income, which deprived the IRS of about $500,000 in tax revenue. *See* Gov't Sent. Mem., *United States v. Kim*, 2:23-cr-00141-JLR, Dkt. 18 (W.D. Wash., Dec. 12, 2023). Similarly, in *United States v. Galanti*, Judge Jones sentenced business owner Eric Galanti to eight months in custody for failing to file business income tax returns for six years, which caused a tax loss of about $800,000. *See* No. CR16-0064RAJ, Dkt. 40, at 2, 7 (W.D. Wash. Apr. 17, 2017) ($800,000 is agreed restitution figure); *see also United States v. Nix*, 2:17-cr-00105-RSL, Dkt. No. 212 (W.D. Wash. Dec. 7, 2018) (Judgment) (sentencing defendant to 60 months in a tax evasion case with $851,904.94 in tax loss following a four-day trial).

The government's fifteen-month recommendation falls squarely within the sentences issued in these similar cases.

**E. The government's recommendation affords restitution.**

The parties agree that McCormick will pay $1,446,341 in restitution to the Internal Revenue Service. *See* Plea Agreement ¶ 14(a). At sentencing or shortly thereafter, the government will propose a judgment that the identifies to which employee's credit restitution is being paid. This information will provide IRS and SSA information the agencies need to make Single Shot's employees whole and ensure they're properly credited for the years they worked at Single Shot.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VI. CONCLUSION

For the foregoing reasons, the government respectfully requests the Court sentence McCormick to fifteen months in prison, three years of supervised release, and order restitution in the amount of $1,446,341.

DATED: October 19, 2026.

Respectfully submitted,

*s/ Lauren Watts Staniar*
LAUREN WATTS STANIAR
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Tel. 206-553-7970
Email. Lauren.staniar@usdoj.gov